USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/22/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARDIANA SHKOZA,

                    Plaintiff,

          v.

NYC HEALTH AND HOSPITALS
CORPORATION and JACOBI MEDICAL
CENTER,

                Defendants.

---

20-CV-3646 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Ardiana Shkoza, proceeding *pro se*, brings this action against her former employer, the New York City Health and Hospital Corporation and Jacobi Medical Center, asserting claims for race discrimination, national origin discrimination, age discrimination, sex discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants have moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is granted in part, but denied as to the following claims: (1) Plaintiff's claim under the NYCHRL (but not federal or state law) that she was subjected to a hostile work environment because of her sex; and (2) Plaintiff's claims that her termination was in retaliation for protected activity under Title VII, the NYSHRL, and the NYCHRL.

**BACKGROUND**

I.      **Factual Background**

The following facts are drawn from Shkoza's complaint, the EEOC charge attached to her complaint, and her memorandum submitted in opposition to Defendants' motion to dismiss, and are assumed to be true for purposes of this motion. *See Roth v. Jennings*, 489 F.3d 499, 509–510 (2d Cir. 2007); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion.").

Plaintiff is a U.S. citizen of Albanian origin. Dkt. 1 ("Compl.") at 3, 8. On March 4, 2019, she was hired into a temporary position as a Hospital Care Investigator for NYC Health and Hospitals, assigned to work at Jacobi Medical Center in the Bronx. *Id*. at 21. She was told the job was temporary for two years. *Id*. at 8. On her first day on the job, the director of her office, Roberto Lujan, changed her department, management, and supervisors. Her supervisor Melissa Emeric allegedly "denied [her] presen[ce] there," turning her back to Plaintiff and failing to train her adequately, even while training other newly hired coworkers. Emeric also purportedly asked Plaintiff where she was from, whether she had a U.S. passport, and whether she had a Social Security number. *Id*. at 9. Emeric also asked Plaintiff's coworkers, in Plaintiff's presence, about their ages. *See* Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pl. Mem."), Dkt. 18, at 2; *see also* Compl. at 4 (Plaintiff was born in 1975).

Plaintiff complained to Lujan about the inadequate training and changing of assignments and reported to him that she felt that she was in a hostile work environment. Compl. at 9; *see also* Compl. at 21 (EEOC charge) (Plaintiff complained about "workplace bullying"). The complaint does not allege that Plaintiff complained about any particular sort of unlawful

discrimination, only that she generally complained of bullying and a hostile work environment. Plaintiff's opposition memorandum, however, contains the assertion that she complained to Lujan that Emeric was discriminating against her "due to [her] nationality." Pl. Mem. at 2.

Plaintiff also asserts that "since the first day," Lujan "used . . . code words" to harass her, noting that "you do not have to spell it out when you want to insult someone because of their national origin." *Id.* at 10. At some point, Lujan wanted to open a new account for Plaintiff, and misspelled her name in creating a username; he wrote "ardiannashkoza" with two Ns, when her first name is in fact spelled with only one N. Plaintiff asserts that in Albania, using two Ns "mean[s] we are going to hurt you [twice] because this is a second time hired and fired by NYC Health [&] Hospital Corporation." *Id.*

Plaintiff additionally alleges that Lujan: (1) commented, about female employees, that "for me all are my wives"; (2) touched Plaintiff's arm with his elbow during a colleague's retirement celebration and remarked "Don't you want this job to have a retirement plan"; (3) massaged Plaintiff's shoulders and told her not to worry after she complained of a hostile work environment. *See* Pl. Mem. at 1. Plaintiff told Lujan not to touch her. *Id.* at 2.

The next morning, Lujan moved his office to the other side of the building, prompting coworkers to ask, about Plaintiff, "Where is the lonely sheep?" Coworkers allegedly heard that Plaintiff told Lujan not to touch her, and made comments implying that Plaintiff would be fired, such as "Yes, she is going home, yes she will be fired yes." Plaintiff was also subjected to "leering and suggesting gestures in front of [Lujan's] office when asking for [Lujan]." *Id.* at 2.

After Emeric learned of Plaintiff's complaint to Lujan, she "made [Plaintiff's] workplace situation even more hostile," by calling her "honey," taking away her office space, denying further training, and initiating her termination. *Id.* Plaintiff interpreted these actions as

"punish[ment] . . . for saying no to the harassment." Plaintiff also alleges that another manager,

Rosemary Young, harassed her by leering, making suggestive gestures, and making "suggestive

noises when [Plaintiff] passed by her office," as well as by asking her whether she complained to

Lujan. *Id*. On April 23, 2019, after 51 days of employment, Plaintiff was directed to report to

Human Resources, where she was told her work was "terminated without reason." Compl. at 10.

## II.     Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission on January 14, 2020. Compl. at 20–22. On February 11, 2020, the EEOC notified

Plaintiff that it had determined that the evidence did not establish a violation of Title VII or the

ADEA and issued Plaintiff a right to sue letter. *Id*. at 16-17. Plaintiff filed her federal complaint

on May 11, 2020, and Defendants moved to dismiss on December 7, 2020. *See* Dkt. 13. The

Court stayed discovery pending adjudication of the motion. Dkt. 15.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(6), a pleading "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In the case of a pro se litigant, the court reads the pleadings leniently and construes them to raise

'the strongest arguments that they suggest.' This guidance applies with particular force when the

plaintiff's civil rights are at issue." *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009)

(quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

In discrimination cases, at the pleadings stage "a plaintiff must plead 'factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting

4

*Iqbal*, 556 U.S. at 678). "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Plaintiff brings claims of age discrimination pursuant to the ADEA, race and national origin discrimination under Title VII, and corresponding claims under the NYCHRL and the NYSHRL. Dkt. 1 at 4–5. In addition, Plaintiff's opposition papers, which allege inappropriate touching and comments on Lujan's part, also suggest that Plaintiff is asserting a claim of a sex-related hostile work environment. Plaintiff also asserts claims of unlawful retaliation. The Court discusses these claims in turn.

### I.       Discrimination Claims

Plaintiff's federal claims are all governed by similar standards. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. The ADEA prohibits discrimination against employees over the age of forty on the basis of their age. *See* 29 U.S.C. §§ 621-634. To state an employment discrimination claim under these statutes, a Plaintiff must allege that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [pertaining to the employee's protected class]; or its invidious comments about others in the

employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Id*. at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *see also Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). With respect to age discrimination claims, a plaintiff must additionally "allege 'that age was the but-for cause of the employer's adverse action.'" *Vega*, 801 F.3d at 86 (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177 (2009)).

Although the standard governing discrimination claims brought under Title VII and the ADEA is equally applicable to claims raised under the state human rights law, *see Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010), "courts must analyze [city human rights law] claims separately and independently from any federal and state law claim." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). *See* Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 (providing that the NYCHRL shall "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title have been so construed."). Nonetheless, even though the NYCHRL must be given a more liberal construction, "the same federal procedural rules apply" to city law claims raised in federal court, and "a plaintiff must still allege facts giving rise to an inference of discrimination." *Pagan v. Morrisania Neighborhood Fam. Health Ctr.*, No. 12 CIV. 9047 (WHP), 2014 WL 464787, at \*3 (S.D.N.Y. Jan. 22, 2014) (citations omitted).

The Court first finds that Plaintiff has failed to state a claim that her termination constituted age discrimination. Shkoza's only age-related allegations are that she was 43 at the

time of her employment at Jacobi, *see* Compl. at 21 (EEOC charge), and that at one point Emeric

"ask[ed] [Plaintiff's] coworkers"—all of whom were younger than Plaintiff—"about their ages

while she was sitting next to [Plaintiff]," Pl. Mem. at 2. That stray and facially neutral comment

is insufficient to raise a minimal inference that her termination was the result of age

discrimination. Nor has Plaintiff alleged any facts showing that she was treated less favorably

than similarly situated employees who were younger than her. *See Cartella v. Liriano*, 633 F.

Supp. 2d 54, 71 (S.D.N.Y. 2009) (rejecting a plaintiff's claim for age discrimination where he

failed to present any "evidence as to whether other employees not in Plaintiff's protected classes

were similarly situated in all material respects to Plaintiff at the time of the [job] assignment,"

and whether such similarly situated employees received more favorable treatment.); *Marcus v.*

*Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016). Plaintiff's age-related discriminatory

termination claim must be dismissed.

　　　Next, Plaintiff has failed to state a claim for discriminatory termination on the basis of

race or national origin. Plaintiff alleges that she identifies as white and that her coworkers were

predominantly Latino. *See* Pl. Mem. at 1-3. The complaint also asserts that Emeric asked her

where she was from, whether she had a U.S. passport, and whether she had a Social Security

number, *id*. at 9; and that Lujan "used . . . code words" to harass her on the basis of her national

origin. *Id*. at 10. These allegations are insufficient to raise a minimal inference of discriminatory

motivation. Facially neutral questions about a person's place of origin or citizenship status—

particularly questions that may naturally arise when a new employee is hired—are not probative

of a discriminatory animus absent any other indicia of discrimination. *See Ihim v. St. Vincent's*

*Hosp. Westchester*, No. 11-CV-8024 (JCM), 2015 WL 5698038, at *7 (S.D.N.Y. Sept. 25,

2015). The allegation that Lujan used discriminatory "code words," without any more detail, is

vague and conclusory, and the allegation that Lujan deliberately misspelled Plaintiff's name with two Ns as a way of signaling an intent to "hurt [her] [twice]" strikes the Court as implausible, particularly in the absence of any allegations that Lujan would have understood the purported meaning of using a double N "in Albania." Compl. at 10. *See Ghosh v. New York City Dep't of Health*, 413 F. Supp. 2d 322, 331, n.7 (S.D.N.Y. 2006) (misspelling of plaintiff's name was not sufficient to raise an inference of discrimination). Furthermore, as with her age discrimination claim, Plaintiff has failed to allege with any particularity that similarly situated persons outside her protected classes were treated differently or that her termination was in any way connected to her protected characteristics.

Nor, for similar reasons, has Plaintiff adequately alleged that she was subjected to a hostile work environment on the basis of her age, race, or national origin. To establish a hostile work environment under the ADEA, Title VII, and the NYSHRL, a plaintiff must plead facts showing "that the complained of conduct (1) is objectively severe or pervasive — that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal question marks and citations omitted) (Title VII); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (ADEA); *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (NYSHRL). Similarly, while the NYCHRL standard is more permissive, "omitting the requirement that the complained-of conduct be severe or pervasive," *Moazzaz v. MetLife, Inc.*, No. 19-CV-10531 (JPO), 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021), "a plaintiff claiming a hostile work environment [must nonetheless] demonstrate that he or she was treated less well than other employees *because of* the relevant characteristic." *See Reichman v. City of New York*,

179 A.D.3d 1115, 1118 (2d Dep't 2020) (emphasis added). Although Plaintiff has made

conclusory allegations that she was subjected to bullying, a hostile environment, and insulting

comments, *see* Compl. at 21, 27, none of her allegations support an inference that the

complained of comments constituted hostility "because of" her age, race, or national origin.

*Brennan v. Metro. Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir. 1999). *See also Adams v. New*

*York State Educ. Dep't*, 752 F. Supp. 2d 420, 474 (S.D.N.Y. 2010) (citation omitted) ("Hostile

work environment claims under Title VII are consistently rejected when the plaintiff neglects to

plead facts that objectively rise to a level of hostility based upon her membership in a protected

class."). For these reasons, the complaint fails to state a claim for a hostile work environment on

the basis of age, race, or national origin discrimination.

Whether Plaintiff has stated a claim that she was subjected to a hostile work environment

because of her sex is a closer question.[1] In her opposition to Defendants' motion to dismiss,

which the Court considers as supplementing the complaint's factual allegations, *see Brooks v.*

*Jackson*, No. 11-CV-6627 (JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013), Plaintiff

asserts facts that suggest a claim of being subjected to a hostile work environment on the basis of

her sex. Of note, she alleges that Lujan (1) commented, about female employees, that "for me all

are my wives"; (2) touched Plaintiff's arm with his elbow during a colleague's retirement

---

[1] Although Plaintiff's complaint does not purport to raise a claim for discrimination on the basis
of sex, *see* Compl. at 3 (leaving unchecked the "sex" box on the form employment
discrimination complaint provided by the district court), the Second Circuit has made clear that
"[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the
merits of a claim." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc).
Particularly where a *pro se* litigant is involved, it is the substance of the complaint's allegations
that determines whether a plaintiff has asserted a claim. *See McLeod v. Jewish Guild for the*
*Blind*, 864 F.3d 154, 158 (2d Cir. 2017) (where *pro se* plaintiff's factual allegations supported
claims not formally asserted, district court should have construed complaint as asserting claims
under those laws, "regardless of her failure to check the appropriate blank on a form complaint").

celebration and remarked "Don't you want this job to have a retirement plan"; (3) massaged

Plaintiff's shoulders while telling her not to worry after she complained of a hostile work

environment. *See* Pl. Mem. at 1.[2]

The Court finds these allegations to be insufficient to state a claim of a hostile work

environment under Title VII or the NYSHRL. A federal or New York State hostile-work

environment claim is assessed by looking at "the totality of the circumstances, including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted).

What is alleged here are essentially two "isolated incidents of offensive conduct"—an

inappropriate remark and an incident of unwanted touching—which, "unless extremely serious,"

will "not support a hostile work environment claim." *Gallo v. Alitalia-Linee Aeree Italiane-*

*Societa per Azioni*, 585 F. Supp. 2d 520, 536 (S.D.N.Y. 2008) (internal quotation marks and

citation omitted). Courts regularly dismiss similar claims under Title VII at either the motion to

dismiss or summary judgment stages. *See, e.g., Quinn v. Green Tree Credit Corp.,* 159 F.3d 759,

768 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101 (2002) (two alleged incidents involving an explicit sexual remark and

inappropriate, deliberate touching did not establish hostile work environment); *Dayes v. Pace*

*Univ.*, No. 98 CIV. 3675 (WHP), 2000 WL 307382, at \*4 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F.

---

[2] Plaintiff also alleges that her manager Rosemary Young "leered," made "suggesti[ve] gestures" toward her, and made "suggestive noises" when Plaintiff passed her office. *Id*. at 2. Although under some circumstances, leering together with suggestive noises and gestures could support an allegation of a sex-based hostile work environment, the factual assertions regarding Rosemary Young do not appear, when read in context, to be related to sexual advances or sexual harassment—nor does Plaintiff argue that they were.

App'x 204 (2d Cir. 2001) (no hostile work environment where plaintiff was subjected to sexual comments and touched on the back); *Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08-CV-6272, 2010 WL 3958787, at *11 (S.D.N.Y. Sept. 27, 2010), *aff'd*, 451 F. App'x 57 (2d Cir. 2011) (three allegations of offensive remarks insufficient to constitute a hostile work environment); *Wessinger v. OSI Rest. Partner's LLC*, No. 5:14-CV-175 (MAD), 2014 WL 5168702, at *8 (N.D.N.Y. Oct. 14, 2014) (two incidents of a shoulder and back rub insufficient to create an abusive working environment). The conduct described in Plaintiff's opposition memorandum, even if inappropriate, is insufficiently severe and continuous to rise to the level of a hostile work environment under Title VII and the NYSHRL.[3]

As noted above, however, the NYCHRL's more liberal standard "omit[s] the requirement that the complained-of conduct be severe or pervasive" to constitute a hostile work environment. *Moazzaz*, 2021 WL 827648, at *8. Although "petty slights and trivial inconveniences" do not amount to a hostile work environment, *Reichman*, 179 A.D.3d at 1118, even "a single comment that objectifies women . . . made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable." *Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27, 41 n.30 (1st Dep't 2009). *See Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (1st Dep't 2012) (trial court erred in granting summary judgment on plaintiff's NYCHRL claim where defendant disseminated emails containing mildly offensive sexual media content and made sexually charged comments about

---

[3] As noted below, however, Plaintiff's hostile work environment claim survives under the more liberal standard of the NYCHRL. Should discovery taken in connection with that claim uncover evidence that suggests that the complained of conduct was "objectively severe or pervasive," *Patane*, 508 F.3d at 113, the Court may allow Plaintiff the opportunity to amend the Complaint at that time to replead a sex-based hostile work environment claim under Title VII and the NYSHRL.

female colleagues' bodies); *Baez v. Anne Fontaine USA, Inc.*, No. 14-CV-6621 (KBF), 2017 WL

57858, at *5 (S.D.N.Y. Jan. 5, 2017) (denying summary judgment on NYCHRL claim of a

hostile work environment where plaintiffs' "coworkers spread a rumor that she went bra-less to a

meeting"); *Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, No. 16 CIV. 4897 (AT),

2021 WL 1226658, at *8 (S.D.N.Y. Mar. 31, 2021). Reading Plaintiff's *pro se* allegations with

due leniency, the combination of Lujan's alleged comment that he views female coworkers as his

"wives"—a comment that arguably signals views about the role of women in the workplace—

with an incident of alleged unwanted touching, even if insufficiently severe or pervasive to

amount to a hostile work environment under federal or state law, satisfies the more liberal

NYCHRL standard. Accordingly, the Court denies Defendants' motion to dismiss with respect to

Plaintiff's city law claim for a hostile work environment on the basis of sex at this stage of the

litigation.

## II.     Retaliation Claims

Plaintiff also asserts claims for retaliation, arguing generally that she was terminated in

response to her complaints about the workplace. A plaintiff can establish a *prima facie* case of

retaliation under Title VII, the ADEA, or the NYSHRL by showing that (1) she participated in

protected activity, (2) that her participation was known to her employer, (3) that her employer

thereafter subjected her to a materially adverse employment action, and (4) that there was a

causal connection between the protected activity and the adverse employment action. *See*

*Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (citing

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)); *see also Chowdhury v. Sadovnik*,

No. 17 Civ. 2613 (PKC), 2017 U.S. Dist. LEXIS 149691, *14 (E.D.N.Y. Sept. 14, 2017)

(standards the same under the ADEA and Title VII). At the motion to dismiss stage, "the

allegations in the complaint need only give plausible support" to the *prima facie* requirements. *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). Accordingly, for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that '(1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice.'" *Id.* (quoting *Vega*, 801 F.3d at 90). "Under the NYCHRL the elements of retaliation are identical except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'" *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (citing N.Y.C. Admin. Code Sec. 8–107(7)).

It is undisputed that Plaintiff suffered an adverse employment action when she was terminated. *See Farmer*, 473 F. Supp. 3d at 331. Moreover, at the motion to dismiss stage she can support a finding of the necessary causal connection between her workplace complaints and her termination merely by dint of their temporal proximity of several weeks.[4] *See Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citation omitted) ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action."); *Feliciano v. City of New York*, No. 14 Civ. 6751 (PAE), 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases requiring, in the absence of additional facts supporting causation, that the adverse action occur within approximately two months of plaintiff's protected activity); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting that five months

---

[4] According to the complaint and EEOC charge, Plaintiff complained to Lujan on March 27 and/or April 12, and was terminated on April 23. Compl. at 9, 21-22.

between protected activity and adverse employment action is not too long to establish a causal relationship).

Defendants nonetheless dispute that Plaintiff's complaints about the workplace constituted protected activity. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Farmer*, 473 F. Supp. 3d at 331 (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012)). A plaintiff suing for retaliation "need not prove that the conditions against which he protested actually amounted" to discrimination. *Bampoe v. Coach Stores, Inc.*, 93 F. Supp. 2d 360, 371 (S.D.N.Y. 2000); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). Plaintiff is, however, "required to have had a good faith, reasonable belief that [she] was opposing an [unlawful] employment practice," and such a belief "is not reasonable simply because he or she complains of something that appears to be discrimination in some form." *Id*. at 14-15 (citations omitted). Indeed, Plaintiff's belief that she was opposing a practice made unlawful by the antidiscrimination laws must have been "*objectively* reasonable"—that is, reasonable when "measured against existing substantive law." *Yan v. Ziba Mode Inc.*, No. 15-CV-47 (RJS), 2016 WL 1276456, at *6 (S.D.N.Y. Mar. 29, 2016) (quoting *Sosa v. Local Staff, LLC,* 618 F. App'x 19, 19-20 (2d Cir. 2015)). At the same time, "it is possible for an employee to reasonably believe that specified conduct amounts to harassment, even when that conduct would not actually qualify as harassment under the law." *Quinn*, 159 F.3d 759 at 769 (plaintiff established *prima facie* case for retaliation in response to her complaints of sexual harassment, even where plaintiff failed to adduce facts sufficient to establish defendant's liability for sexual harassment).

14

In her complaint, Dkt. 1, Plaintiff describes complaining to Lujan about a "workplace hostile environment," Compl. at 5; about "not being trained[,] change[s] [to] [her] assignments[,] [and her] co-worker saying [she] will be fired," *id*. at 9; as well as about being "under stress and being pressured," *id*. She also stated in her EEOC charge that she complained "about the bullying in the workplace" and "workplace issues." *Id*. at 21-22. The complaint further attaches an email Plaintiff sent to Lujan in which she remarked "I have limited training, bullied, etc. etc." *Id*. at 27. As Defendants noted in their initial memorandum of law in support of their motion to dismiss, these allegations are insufficient to establish that plaintiff engaged in any protected activity. The complaint itself is devoid of allegations that in her complaints or conversations with her supervisors, she raised any concerns about discrimination on the basis of age, sex, race, or national origin. If these were her only allegations that she had complained of conduct that might arguably constitute unlawful discrimination, she would not have adequately alleged the protected activity element for purposes of a retaliation claim. *See Olsson v. ABM Taxi Dispatch Laguardia Airport*, No. 18 CIV. 8815 (PGG), 2020 WL 5038742, at *6 (S.D.N.Y. Aug. 26, 2020) (quotation marks and citation omitted) ("General complaints about employment concerns . . . do not constitute protected activity.").

In opposition to Defendants' motion to dismiss, however, Plaintiff includes additional allegations to suggest that she did, in fact, complain to her supervisors about conduct made unlawful by the antidiscrimination laws. In particular, she asserts that she complained to Lujan about "feeing harassed," that she told Tanya Blanchette and Joanne DeSarlo about "being treated

15

differently," and of greatest relevance, that she complained to Lujan that Emeric was

discriminating against her "due to [her] nationality." Pl. Mem. at 2.[5]

Because Plaintiff does allege that she complained to Lujan about national origin

discrimination, the only remaining question is whether she "had a good faith, [objectively]

reasonable belief that [she] was opposing an [unlawful] employment practice." *Kelly*, 716 F.3d at

15. As noted above, the Court is granting Defendants' motion to dismiss with respect to

Plaintiff's claims of national origin discrimination, finding that none of the complaint's

allegations raise an inference of unlawful discrimination. *See supra* at 7. Under similar

circumstances, some courts have dismissed retaliation claims, finding that a plaintiff lacked an

objectively good-faith belief that she was opposing an unlawful discriminatory practice when the

discrimination claims were themselves deficient. *See, e.g., Hernandez v. New York City Dep't of

Sanitation*, No. 18 CIV. 1808 (LGS), 2018 WL 5447540, at *3 (S.D.N.Y. Oct. 29, 2018)

(dismissing retaliation claim where "insufficient facts [were] alleged to support a good faith

belief that Plaintiff had suffered racial discrimination"); *Yan*, 2016 WL 1276456, at *7

("Plaintiff's allegations of mistreatment are insufficient to support a plausible inference that he

possessed an *objectively reasonable*, good-faith belief that he was experiencing discrimination.")

---

[5] Defendants ask the Court to disregard these additional allegations, contending that they contradict the complaint itself. As noted above, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker*, 717 F.3d at 122. But those allegations must be "consistent with the complaint." *Brooks*, 2013 WL 5339151, at *3. Defendants argue that, because in her prior filings Plaintiff "has always referred to the conduct as 'bullying,' not national origin discrimination, and never stated that she informed Lujan she felt she was being discriminated against based upon her nationality," Def. Reply Mem. at 16, the Court should disregard her supplemental allegations raised in opposition to the motion to dismiss as contradicting her earlier filings. The Court is not persuaded. Plaintiff's statement that she complained to Lujan about national origin discrimination does not contradict her prior statements that she complained about bullying generally—if anything, it adds specificity to them.

(emphasis in original). *See also Sosa*, 618 F. App'x at 19–20 (internal quotation marks and citation omitted) ("The objective reasonableness of an employee's belief that the employer has violated Title VII must be measured against existing substantive law, because a failure to do so would eviscerate the objective component of our reasonableness inquiry.").

Under these circumstances, the Court finds that Plaintiff's alleged belief that by complaining to Lujan, she was opposing unlawful national origin discrimination is not so unreasonable that it lacked any objective basis. It cannot be the rule that, where a Court dismisses a discrimination claim, a plaintiff is *ipso facto* unable to assert a claim of retaliation because she cannot, as a matter of law, have had an objectively good faith belief that the conduct about which she complained was made unlawful by the antidiscrimination laws. If that were the case, no retaliation claim could survive the dismissal of the underlying discrimination claim, which is hardly uncommon. *See Quinn*, 159 F.3d at 762 ("It sometimes happens—more frequently than might be imagined—that an employee whose primary claim of discrimination cannot survive pre-trial dispositive motions is able to take to trial the secondary claim that he or she was fired or adversely affected in retaliation for asserting the primary claim."); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ("To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII."). Of course, in some circumstances, a claim of discrimination will be so deficient that it cannot provide a plaintiff with an objectively good-faith belief that she was complaining of unlawful conduct. But the Court is reluctant to make such a finding here, particularly in the case of a *pro se* litigant. The Court thus concludes that Plaintiff has adequately alleged that she engaged in protected activity when complaining of national origin discrimination.

The Court will also allow her retaliation claim to proceed on the theory that she engaged in protected activity by opposing sex discrimination. As noted above, Plaintiff has sufficiently stated a claim under the NYCHRL that she was subjected to a hostile work environment on the basis of sex, owing to her allegations that Lujan commented that female employees were his "wives" and massaged her shoulders. When subjected to that behavior, she claims she responded by saying "Do not touch me, please" after which (1) coworkers made comments implying that she would soon be fired; (2) coworkers made "leering and suggestive gestures" when she was in front of Lujan's office; and (3) she was fired. Pl. Mem. at 2-3. As this Court recently noted, in its view, refusing an unwanted sexual advance can amount to protected activity under the retaliation laws. *See Areu v. Fox News Network*, No. 20-CV-8678 (RA), 2021 WL 4124226, at *13 (S.D.N.Y. Sept. 9, 2021) (recognizing a divide among courts but concluding that "resisting or opposing workplace sexual harassment—a category that may include a refusal to engage in unwanted sexual activity—must be protected activity within the confines of Title VII"); *see also Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 447–48 (S.D.N.Y. 2018) ("Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct."). Construing Plaintiff's allegations in the light most favorable to her, and with the requisite leniency accorded a *pro se* litigant, it would be reasonable to infer that Lujan's "wives" statement coupled with unwanted touching was a sexual advance, which Plaintiff then rebuffed with her "do not touch me" comment.

Plaintiff's allegations thus support a reasonable inference that she (1) engaged in protected activity known to the employer by complaining of national origin discrimination and by opposing a perceived sexual advance; (2) that she suffered a materially adverse employment action when she was fired; and (3) that the close temporal proximity of her protected activity to

18

her termination supports an inference of a causal connection between the two. *See Farmer*, 473

F. Supp. 3d at 330. Defendants' motion is thus denied with respect to Plaintiff's claim for

retaliation in violation of Title VII, the NYSHRL, and the NYCHRL.[6]

### III.   Amenability of Jacobi Medical Center to Suit

Finally, the Court agrees with Defendants that Jacobi Medical Center, as a facility within

the New York City Health and Hospitals Corporation, is not a suable entity. *See Ochei v.

Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 288 (S.D.N.Y. 2006) ("As a facility owned

and operated by HHC, Coler/Goldwater may not be sued in its independent capacity."). Although

Health and Hospitals "has the capacity to be sued," a facility within it does not. *Ayala v. Bellevue

Hosp.*, No. 94 CIV. 1551 (WHP), 1999 WL 637235, at *3 (S.D.N.Y. Aug. 20, 1999).

Accordingly, while several of Plaintiff's claims against Health and Hospitals will proceed, Jacobi

Medical Center is dismissed from this action.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in

part. The following claims survive: (1) Plaintiff's claim for a hostile work environment on the

basis of sex pursuant to the NYCHRL; and (2) Plaintiff's claims for retaliatory termination

pursuant to Title VII, the NYSHRL, and the NYCHRL.

This action will be referred by separate order to the Southern District's mediation

program. The Court will request that counsel be appointed for Ms. Shkoza for the limited

purpose of mediation.

---

[6] Because Plaintiff does not allege that she complained of age discrimination, any claim for retaliation under the ADEA, to the extent she asserts one, is dismissed.

In the event that mediation is not successful, an initial pretrial conference is scheduled for December 17, 2021 at 10:45 a.m. The Court will hold this conference by telephone. The parties shall use the dial-in information provided below to call into the conference: Call-in Number: (888) 363-4749; Access Code: 1015508. This conference line is open to the public.

Also in the event that mediation is not successful, no later than December 10, 2021, Defendants shall submit a status letter that includes updates regarding (1) any discovery that has already taken place and that which will be needed; (2) prospects for settlement; and (3) a description of any other contemplated motions. Defendants shall also submit a proposed case management plan and scheduling order, a template of which is available at https://www.nysd.uscourts.gov/sites/default/files/practice_documents/raCivilCaseManagementAndSchedulingOrder12012015.pdf. Defendants are directed to make reasonable efforts to confer with Plaintiff before making these submissions, and shall indicate whether Plaintiff agrees with the proposals contained therein. If Ms. Shkoza disagrees with Defendants' proposals, she may submit her own letter and/or proposed case management plan.

The Clerk of Court is respectfully directed to (1) terminate the motion pending at Dkt. 13, (2) terminate Defendant Jacobi Medical Center, and (3) mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:    September 22, 2021
          New York, New York

                                        Ronnie Abrams
                                        United States District Judge

20