UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC-SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC#:                            │
│ DATE FILED:                      │
└─────────────────────────────────┘
```

---

ARDIANA SHKOZA,

                    Plaintiff,

v.

NYC HEALTH AND HOSPITALS
CORPORATION,

                    Defendant.

---

No. 20-CV-3646 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Ardiana Shkoza, proceeding *pro se*, filed suit against her former employer, the New York City Health and Hospitals Corporation ("NYC Health & Hospitals"), after it terminated her temporary employment. Alleging retaliation and discrimination on the basis of race, national origin, age, sex, and gender, Shkoza asserted numerous claims under federal, state, and city law. Last year, the Court dismissed her complaint except as to (1) her claims of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-3(a), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(7), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(7); and (2) her claim of gender discrimination under the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a). Before the Court is NYC Health & Hospitals' motion for summary judgment on those remaining claims. For the reasons that follow, NYC Health & Hospitals' motion for summary judgment is granted.

## BACKGROUND[1]

On March 4, 2019, Ardiana Shkoza began her job as a temporary hospital care investigator in the billing department at Jacobi Medical Center in the Bronx. *See* Def.'s 56.1 ¶ 8, Dkt. 77; Pl.'s 56.1 ¶ 8, Dkt. 84. Problems ensued shortly thereafter, culminating in her termination on April 23, 2019. *See* Def.'s 56.1 ¶ 62; Pl.'s 56.1 ¶ 62.

According to her supervisors, Shkoza struggled with work performance and interpersonal issues almost immediately upon hire. Melissa Emeric, a senior hospital care investigator, recalls that Shkoza had difficulty understanding billing concepts, *see* Francis Decl. Ex. D, 17:17–18:19, Dkt. 76, and required "one-on-one training rather than a tutorial," *id*. at 18:17. She explains that they "had to continuously repeat the same actions over and over for several weeks. It became an issue even explaining what certain ID numbers were or what calling insurances were." *Id*. at 30:22–25. Coordinating Manager Rosemary Young similarly recounts that Shkoza experienced difficulties in her role, requiring her to confront Shkoza about her performance problems. *See* Francis Decl. Ex. E, 22:7–10; *id*. at 30:3–9. Additionally, Emeric "describes" Shkoza's treatment of colleagues as "very" "accus[atory]," "derogatory," and "dismissive." Francis Decl. Ex. D, 44:9–10. Colleagues complained, for example, that Shkoza snapped or pointed at them for help. *See id*. at 18:6–15; 20:10–16.

Shkoza likewise felt dissatisfied with her time at Jacobi Medical Center. She complained of workplace issues to her indirect supervisor, Associate Director Roberto Lujan, four or so times during her first month of employment. *See* Francis Decl. Ex. C, 22:3–16; Francis Decl. Ex. B, 77:8–9; Def.'s 56.1 ¶ 14; Pl.'s 56.1 ¶ 14. In particular, she objected to changes in her supervisors and work assignments, *see* Def.'s 56.1 ¶ 19; Pl.'s 56.1 ¶ 19, as well as to the use of her workstation

---

[1] The Court draws the following facts from the parties' Local Rule 56.1 statements of material facts and supporting documents.

by a colleague who was "doing dental [billing]," Shkoza Decl. ¶ 49, Dkt. 82; *see* Def.'s 56.1 ¶ 19; Pl.'s 56.1 ¶ 19. She also complained of "harassment," "bullying," a "hostile work environment," and inadequate training. Francis Decl. Ex. B, 70:5–71:19; Francis Decl. Ex. H; *see* Def.'s 56.1 ¶ 20; Pl.'s 56.1 ¶ 20.[2] Shkoza further relayed her concern about bullying to a compliance officer, explaining that it began on her very first day of work. *See* Def.'s 56.1 ¶ 16; Pl.'s 56.1 ¶ 16. She also alleges that she "discussed with [Director] Tanya Blanchette about being treated unfairly and feeling unwell in the current workplace environment and having been not trained properly." Shkoza Decl. ¶ 9. Separately, she asserts that she complained to another colleague about being followed to the bathroom by a woman who commented on her clothing, including her wearing of pants. See Pl.'s 56.1 ¶ 66; Francis Decl. Ex. B, 64:11–66:10.

Shkoza now also complains of how Lujan treated of her. She alleges that Lujan touched her twice without her consent. *See* Shkoza Decl. ¶ 7; Pl.'s 56.1 ¶ 35; Def.'s 56.1 ¶ 35. On the first occasion, Lujan allegedly nudged her arm with his elbow during a colleague's retirement party and asked whether she had thought about retirement. *See* Shkoza Decl. ¶ 7; Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1, Dkt. 18; Pl.'s Opp'n to Def.'s Mot. for Summary J. at 2, Dkt. 83. On the second occasion, Lujan allegedly "massag[ed]" her shoulders in a hallway after she had been crying during a meeting in his office. Pl.'s 56.1 ¶ 35. Shkoza also initially alleged that Lujan commented, "[F]or me all [female coworkers] are my wives," Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1, but has since described his remark as indicating that the female employees resembled his wife, *see* Pl.'s 56.1 ¶ 18. Meanwhile, Young allegedly "leer[ed] [and] star[ed]" at her, making "suggestive gestures." Shkoza Decl. ¶ 6; *see* Pl.'s 56.1 ¶ 66. Shkoza further claims that Lujan abused his power by assigning her to work in the billing department instead of under the employees who interviewed her. *See* Pl.'s 56.1 ¶ 10.

---

[2] According to Shkoza, Lujan directed her to stop using the term "harassment." Pl.'s 56.1 ¶ 18; *see* Shkoza Decl. ¶ 8.

Lujan, for his part, does not dispute that he touched Shokza's shoulder after she had cried during a meeting. *See* Pl.'s 56.1 ¶ 35; Def.'s 56.1 ¶ 35. According to him, he was "just consoling [her] because she was upset about [an] email." Francis Decl. Ex. C, 38:19–20. As she acknowledges, Lujan also offered her a tissue and ceased touching her at her direction. *See* Pl.'s 56.1 ¶¶ 35–37; Def.'s 56.1 ¶¶ 35–37.

Emeric and Young ultimately decided to terminate Shkoza. *See* Pl.'s 56.1 ¶ 53; Def.'s 56.1 ¶ 53. On April 23, 2019, Young sent an email to the human resources department stating, "I would like to terminate Adriana Shkoza, due to her unsatisfactory work performance, . . . as soon as possible." Francis Decl. Ex. K. That same day, 50 days after her employment had begun, Shkoza received notice of her termination, effectively immediately. Francis Decl. Ex. L. According to Emeric, the termination occurred because Shkoza "could not understand or do the functions of a hospital care investigator. . . . [S]he [did] not understand[] the job or [its] functions" and "ha[d] conflicts with other [hospital care investigators]." Francis Decl. Ex. D, 28:11–15. NYC Health & Hospitals terminated Shkoza without a formal evaluation of her performance. *See* Pl.'s 56.1 ¶ 61; Def.'s 56.1 ¶ 61. As Young explains, no formal evaluation was necessary given that Shkoza had not successfully completed her training. *See* Pl.'s 56.1 ¶¶ 57–60; Def.'s 56.1 ¶¶ 57–60.

Several months after her termination, Shkoza filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Francis Decl. Ex. M. In her charge, she alleged that she had experienced discrimination due to her age, national origin, and sex. *See id.* Shkoza also alleged retaliation and reported having lodged multiple complaints of workplace bullying. *See id.* She further asserted that Lujan had "touched [her] twice on [her] shoulder when [she] went to his office to speak about the workplace issues." *Id.* The EEOC dismissed her charge and notified her of her right to file suit on February 11, 2020. *See* Compl. at 16–17, Dkt. 1.

4

Shkoza filed this action on May 11, 2020, asserting claims for retaliation and race, national origin, age, and sex/gender discrimination pursuant to Title VII, 42 U.S.C. §§ 2000e-2(a), e-3(a); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), (d); the NYSHRL, N.Y. Exec. Law § 296(1)(a), (7); and the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a), (7).

On September 22, 2021, the Court dismissed her complaint for failure to state a claim except as to (1) her claims of retaliation under Title VII, 42 U.S.C. § 2000e-3(a), the NYSHRL, N.Y. Exec. Law § 296(7); and the NYCHRL, N.Y.C. Admin. Code § 8-107(7); and (2) her claim of gender discrimination under the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a)*. It reasoned that Lujan's unwanted shoulder touching combined with his alleged comment about viewing female coworkers as his "wives"—a remark that arguably signaled his perspective on women's role in the workplace—rendered plausible her claim of gender discrimination under the NYCHRL. *See* Mem. Op. & Order at 12, Dkt. 26. In addition, it found some of Shkoza's claims of retaliation plausible on the basis that NYC Health & Hospitals terminated her after she directed Lujan not to touch her. *See id*. at 15, 18–19. It concluded, however, that other alleged grounds for her retaliation claims did not suffice, as many of Shkoza's complaints to colleagues plausibly amounted to only generalized workplace concerns. *See id.* at 15.

After the parties completed discovery, NYC Health & Hospitals filed a motion for summary judgment as to the surviving claims. That motion is now granted.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing

law," and an issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]

"A court reviewing a motion for summary judgment must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). It must also "liberally construe" materials submitted by a *pro se* litigant, "reading [the] submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). That said, "[w]here the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015). And, in doing so, the nonmoving party must provide more than "conclusory allegations." *Id.*

## DISCUSSION

The Court begins with Shkoza's claims of retaliation under federal, state, and city law, followed by her underlying claim of gender discrimination under city law. As a threshold matter, it observes that while Shkoza expresses numerous and far-ranging concerns about her work experience, many of her complaints bear no relationship to her sex or gender. The Court focuses on those that do—or at least arguably do.

### I.    Shkoza's Retaliation Claims

#### A.  Title VII and NYSHRL Claims

Both federal and New York State law prohibit employers from retaliating against their employees for opposing unlawful discrimination. *See* 42 U.S.C. § 2000-3(a); N.Y. Exec. Law §

---

[3] Unless otherwise indicated, this memorandum opinion and order omits all internal quotations marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

296(7). Sexual harassment is one form of unlawful discrimination, as it is "discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

Courts assess retaliation claims under Title VII, 42 U.S.C. § 2000-3(a), and the NYSHRL, N.Y. Exec. Law § 296(7), using the familiar three-part burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ("[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII."). At the outset, a plaintiff bears the burden of establishing a *prima facie* case of retaliation. To do so, she must "demonstrate that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) [she] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013); *Summa*, 708 F.3d at 125. A causal connection requires that the "adverse action would not have occurred [but for] the retaliatory motive," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013), meaning that retaliation must be more than a "substantial or motivating factor," *id.* at 845. A plaintiff, nonetheless, bears only a "minimal" burden of proof at the initial stage of the burden-shifting scheme. *Id.* at 844. If the plaintiff satisfies this burden, she creates a "presumption of discrimination." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).

In the face of such a presumption, the burden shifts to the defendant, who must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* at 70. "If the defendant provides such an explanation, the presumption of retaliation dissipates," and the burden shifts back to the plaintiff. *Id.* The plaintiff must then proffer evidence that the legitimate, non-retaliatory reason "is a mere pretext for retaliation." *Zann Kwan*, 737 F.3d at 845. She must prove "that the

desire to retaliate was," in fact, "the but-for cause of the challenged employment action." *Ya-Chen Chen*, 805 F.3d at 70; *see Summa*, 708 F.3d at 125. Accordingly, a defendant can obtain summary judgment either by (1) proving that a plaintiff failed to establish a *prima facie* case or (2) proffering a legitimate, non-retaliatory reason for its action that the plaintiff fails to rebut with evidence that it is a pretext for retaliation. *See Mario v. P & C Food Markets, Inc*., 313 F.3d 758, 767 (2d Cir. 2002).

Shkoza fails to establish the very first element of a *prima facie* case of retaliation—that she engaged in protected activity. *See Kelly*, 716 F.3d at 14; *Summa*, 708 F.3d at 125. Liberally construed, Shkoza argues that NYC Health & Hospitals fired her for opposing sexual harassment. Specifically, she asserts that she was terminated after telling Lujan, her supervisor, not to touch her when he started to "massage[] [her] shoulders" in a hallway after she cried during a meeting in his office. Pl.'s 56.1 ¶ 35. Lujan does not deny touching Shkoza or that she had been crying. By his account, "[Shkoza] came to [his] office upset," Francis Decl. Ex. C, 38:6, after she had "misinterpret[ed] . . . an email," *id.* at 38:9. Lujan subsequently "brought [Shkoza] a tissue" and "put [his] hand on her shoulder and told her everything w[ould] be okay." *Id*. at 38:11–13. Lujan explains that he was "just consoling her because she was upset about the email," *id*., and Shkoza acknowledges that he stopped touching her as directed, *see* Pl.'s 56.1 ¶¶ 36–37; Def.'s 56.1 ¶¶ 36–37.

This Court, together with most courts in the Second Circuit, has held that resisting or opposing workplace sexual harassment, including by refusing to engage in unwanted sexual activity, constitutes activity protected by Title VII and the NYSHRL. *See Areu v. Fox News Network, LLC*, No. 20-CV-8678, 2021 WL 4124226, at *13 (S.D.N.Y. Sept. 9, 2021); *Hughes v.*

*Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 447–48 (S.D.N.Y. 2018).[4] As one judge in this district put it: "Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct." *Hughes*, 304 F. Supp. 3d at 447–48. Such a refusal may constitute protected activity even if the plaintiff ultimately fails to prove that the underlying discrimination complaint has merit. *See Zann Kwan*, 737 F.3d at 843. Nevertheless, a plaintiff's belief that she was opposing sexual harassment must be a "good faith, reasonable" one. *Kelly*, 716 F.3d at 14–15. Courts measure reasonableness "against existing substantive law," *Sosa v. Loc. Staff, LLC*, 618 F. App'x 19, 19–20 (2d Cir. 2015), accounting for "the social context in which particular behavior occurs and is experienced by its target," *Oncale*, 523 U.S. at 81. It is here that Shkoza's claims fall short.

    "[S]exual harassment preceding" termination is actionable only if it is so "severe or pervasive," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998), that it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Courts have thus rejected sexual harassment claims where touching was merely "harmless" or "accidental," amounting to either a "brief[] touch[] or brush[] up against." *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 521 & n.15 (S.D.N.Y. 2000) (collecting cases); *see also Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (upholding a grant of summary judgment for an employer in the face of two

---

[4] Opposing other forms of unlawful discrimination can also constitute protected activity. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). At the motion-to-dismiss stage of litigation, the Court found Shkoza's retaliation claims plausible on the grounds that she had opposed both sex/gender and national origin discrimination. As to the latter basis for discrimination, the Court reasoned that Shkoza had opposed unlawful discrimination by complaining to Emeric about national origin discrimination. The record, however, contains no support for this allegation. Indeed, Shkoza admits that she never complained to NYC Health & Hospitals that she was being discriminated against because of her national origin prior to filing a charge with the EEOC after her termination. *See* Francis Decl. Ex. B, 64:7–10. NYC Health & Hospitals is thus entitled to summary judgment on Shkoza's retaliation claims to the extent they rely on her alleged opposition to national original discrimination. The Court therefore focuses its analysis on her alleged opposition to sex/gender discrimination.

alleged incidents involving an explicit sexual remark and inappropriate, deliberate touching); *Dayes v. Pace Univ.*, No. 98-CV-3675, 2000 WL 307382, at *4 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 F. App'x 204 (2d Cir. 2001) (granting summary judgment to an employer where plaintiff was subjected to sexual comments and touched on the back). More generally, "isolated incidents" will not suffice "unless [they] [are] extremely serious." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *cf. McArdle v. Arms Acres, Inc., No.* 03-CV-05721, 2009 WL 755287, at *15 (S.D.N.Y. Mar. 23, 2009) (observing that "comments or touching that seem relatively innocuous in isolation may reasonably be found to create an objectively hostile and abusive work environment if they occur with sufficient frequency over a period of time," and collecting cases). "Casual contact that might be expected among friends," such as "a hand on the shoulder," will also not suffice. *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012).

Nor will the conduct here. Lujan merely touched Shkoza's shoulder or shoulders and offered her a tissue after she had been crying in a meeting. *See* Def.'s 56.1 ¶¶ 34–35; Pl.'s 56.1 ¶¶ 34–35. Even if Shkoza held a good faith belief that she was experiencing sexual harassment, no reasonable juror would find such a belief reasonable in the context in which the touching occurred. Allegations that previously helped render Shkoza's belief plausibly reasonable do not, at this stage, find enough support in the record for her claim to survive.[5] Title VII and the NYSHRL, moreover, "do[] not reach genuine but innocuous differences in the ways men and women routinely interact

---

[5] Much of the key evidence upon which Shkoza relies is extremely weak if supportive at all. Shkoza's EEOC charge, for example, makes no reference to Lujan's alleged comment about female employees' likeness to his wife; Lujan's nudge of Shkoza's arm; her being followed to the bathroom; or Young staring, leering, and making suggestive gestures at her. *See* Francis Decl. Ex. M. And while the document Shkoza titles "Original EEOC Complaint February 17/2019 for EEOC Investigation" references these allegations, no reasonable juror would find it to render her belief reasonable. *See* Shkoza Decl. at 12; Shkoza Decl. Ex. 16 at 2–4. Among other things, it cannot be a February 2019 draft of her EEOC charge because Shkoza did not begin her job until March 2019. *See* Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8. Nor could Shkoza have meant February 2020, *after* Shkoza filed her EEOC charge. *See* Francis Decl. Ex. M.

with" one another. *Oncale, Inc.*, 523 U.S. at 81. Accordingly, NYC Health & Hospitals is entitled to summary judgment based on Shkoza's failure to establish a *prima facie* case of retaliation alone.

Even had Shkoza established a *prima facie* case, however, NYC Health & Hospitals would still be entitled to summary judgment. Shkoza fails to present any evidence that could permit a reasonable juror to infer that NYC Health & Hospitals' "legitimate, non-retaliatory reason[s]," *Ya-Chen Chen*, 805 F.3d at 70, for her termination—her unsatisfactory performance and personality conflicts with her colleagues, *see* Mot. for Summ. J. at 10, Dkt. 74—were a pretext for retaliation.

Liberally construed, Shkoza argues that the poor performance explanation for her termination is a pretext for retaliation because (1) Young decided to fire her after only three weeks and (2) there is insufficient evidence of performance problems. The record does not support the argument that Young decided to fire her after only three weeks. In any event, there is evidence that Shkoza experienced difficulty early on. For example, Emeric explains that Shkoza required "one-on-one training rather than a tutorial." Francis Decl. Ex. D, 18:17. And while Shkoza observes that she never received a performance evaluation, Young and Emeric maintain that they alerted Shkoza to their performance concerns. *See* Francis Decl. Ex. E, 30:3–9; Francis Decl. Ex. D, 30:15–31:8. According to Young, she did not conduct a formal performance evaluation because none was required given that Shkoza had not successfully completed her training. *See* Pl.'s 56.1 ¶¶ 57–60; Def.'s 56.1 ¶¶ 57–60. The record, moreover, contains ample evidence of both poor job performance and personality conflicts. For instance, Emeric observes that they "had to continuously repeat the same actions over and over for several weeks," Francis Decl. Ex. D, 30:22–23, and that colleagues disliked it when Shkoza snapped at them, s*ee id.*, 18:6–15; 20:10–16. Similarly, Young recalls, "The errors . . . brought to my attention . . . proved that [Shkoza] w[as] not doing a good job." *See* Francis Decl. Ex. E, 49:13–14. Shkoza's argument of pretext thus lacks merit.

11

The Court grants NYC Health & Hospitals' motion for summary judgment on Shkoza's Title VII and NYSHRL retaliation claims.

### B. NYCHRL Claim

The same goes for her NYCHRL retaliation claim. Like federal and state law, New York City law prohibits employers from retaliating against their employees for opposing unlawful discrimination, including sexual harassment. *See* N.Y.C. Admin. Code § 8-107(7); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).

The standard for establishing a retaliation claim under the NYCHRL, however, is more lenient than it is for the NYCHRL's federal and state analogs. *See Mihalik*, 715 F.3d at 109. Courts must therefore assess NYCHRL retaliation claims "separately and independently" from those under Title VII and the NYSHRL. *Id.* at 109.

Courts assess NYCHRL retaliation claims under a modified version of the *McDonnell Douglas* burden-shifting framework. *See Ya-Chen Chen*, 805 F.3d at 75. The plaintiff must first establish a *prima facie* case. Specifically, she must demonstrate "that (1) she engaged in a protected activity[,] (2) the employer was aware of this activity," (3) the employer engaged in conduct "reasonably likely to deter a person from engaging in that protected activity," and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct. *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 69–70 (S.D.N.Y. 2016); *see Ya-Chen Chen*, 805 F.3d at 75; *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 n.1 (2d Cir. 2015).

The third element of a *prima face* retaliation claim under the NYCHRL is more forgiving than that of its federal and state counterparts, at least on its face. *See Nunez v. Lima*, 762 F. App'x 65, 69 (2d Cir. 2019) (describing the third element of Title VII and NYSHRL retaliation claims in a manner similar to that of the NYCHRL). A plaintiff need not prove that she suffered a materially adverse action; she need only prove that her employer engaged in conduct that was reasonably

likely to deter a person from engaging in a protected activity. *See Ya-Chen Chen*, 805 F.3d at 76. The fourth element of the claim also differs from that of Title VII and the NYSHRL. Rather than prove that the "adverse action would not have occurred [but for] the retaliatory motive," *Zann Kwan*, 737 F.3d at 846, a plaintiff need only prove that discrimination or retaliation played some role in the defendant's action, *see Ya-Chen Chen*, 805 F.3d 59 at 76; *Mihalik*, 715 F.3d at 110 n.8.

Despite these distinctions, the analysis otherwise proceeds in a similar manner. If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "offer legitimate reasons for its actions." *Ya-Chen Chen*, 805 F.3d 59, at 76. And if the defendant satisfies this burden, the burden shifts back to the plaintiff to prove that retaliation in fact played some part in the defendant's actions. *See id.*; *Mihalik*, 715 F.3d at 110 n.8. "In other words, summary judgment [for the defendant] is appropriate if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." *Ya-Chen Chen*, 805 F.3d 59 at 76. The record does just that.

As with her other retaliation claims, Shkoza fails to establish a *prima facie* case or meaningfully respond to the proffered legitimate reasons for her termination. The NYCHRL renders it unlawful for "an employer . . . because of [a person's] actual or perceived . . . gender . . . to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). Courts have interpreted this provision to prohibit workplace sexual harassment. *See, e.g.*, *Santana v. Latino Express Rests., Inc*., 198 F. Supp. 3d 285, 295 (S.D.N.Y. 2016). Furthermore, as most courts have held under Title VII and the NYSHRL, resisting or opposing such harassment, including by refusing to engage in unwanted sexual activity, constitutes activity protected by the NYCHRL. *See Mihalik*, 715 F.3d at 115; *Santana*, 198 F. Supp. 3d at 296. Likewise, a plaintiff's belief that she was doing so must still be in "good faith" and "reasonable," *Zann Kwan*, 737 F.3d at 84, given the "overall context in which

13

the challenged conduct occurs," *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 657 (E.D.N.Y. 2015).

Sexual harassment under the NYCHRL, contrary to its federal and state counterparts, need not be "severe or pervasive." *Mihalik*, 715 F.3d at 114. To prevail on such a claim, a plaintiff need only show that "that she has been treated less well at least in part because of her gender." *Mihalik*, 715 F.3d at 110. "[T]he NYCHRL," however, "is not a general civility code"; it does not cover "petty slights and trivial inconveniences." *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 69 (2d Cir. 2023); *see Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 553 (S.D.N.Y. 2023). Courts have thus found "isolated incidents of . . . physical conduct" to be "the type of petty slights and trivial inconveniences" that do not establish a NYCHRL claim. *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013); *see, e.g.*, *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 505–06 (S.D.N.Y. 2010) (finding that a plaintiff could not sustain a sexual harassment claim under the NYCHRL where her supervisor "[told] a crude anecdote from his sex life with another woman, and occasionally refer[ed] to [the plaintiff] as voluptuous and knock[ed] her knee"); *Ellis v. City of New York*, No. 08-CV-7605, 2011 WL 3279057, at *8 (S.D.N.Y. July 28, 2011) (finding a defendant's "sniff[] and kiss[]" to be a petty slight); *see also Carter v. Verizon*, No. 13-CV-7579, 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015) (concluding that alleged "repeated touchings" that occurred because of a plaintiff's gender to be "barely sufficient" to state a claim).

Lujan's touching of Shkoza's shoulder or shoulders is such a slight or inconvenience given the "context in which . . . [it] occur[ed]." *Dillon*, 85 F. Supp. 3d at 657. Once again, allegations that previously rendered Shkoza's sexual harassment claim plausible do not, at this stage, find enough support in the record for that claim to survive. Nor do any others. It is true that, under the NYCHRL, "a single comment that objectifies women"—"made in circumstances where that comment would, for example, signal views about the role of women in the workplace"—may "be

14

actionable." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 n.30 (1st Dep't 2009). Here, however, the record contains insufficient evidence corroborating Lujan's alleged comment about female employees and his wife. *See supra* note 5.

In any event, even had Shkoza established a *prima facie* case of retaliation, she fails to meaningfully call into question NYC Health & Hospitals' "legitimate reasons" for her termination. *Ya-Chen Chen*, 805 F.3d 59, at 76. In short, "the record establishes as a matter of law that discrimination [and] retaliation played no role in the [NYC Health & Hospitals'] actions." *Id.*

The Court thus grants NYC Health & Hospitals' motion for summary judgment on Shkoza's NYCHRL retaliation claim.

## II.     Shkoza's NYCHRL Discrimination Claim

Shkoza also brings an underlying claim of gender discrimination based on her alleged sexual harassment. Courts apply the same framework to discrimination claims under the NYCHRL as they do to retaliation claims. *See Ya-Chen Chen*, 805 F.3d at 75. Accordingly, the plaintiff must first establish a *prima facie* case. If she does so, the burden shifts to the defendant to "offer legitimate reasons for its actions," *id.* at 76, and if the defendant does so, the burden shifts back to the plaintiff to prove that discrimination in fact played some role in the defendant's action, *see Mihalik*, 715 F.3d at 110 n.8. A court must grant summary judgment for the defendant if the record establishes as a matter of law that discrimination played no role in the defendant's actions. *See id.*; *Ya-Chen Chen*, 805 F.3d 59 at 76.

It does so here. To establish a *prima facie* case of gender discrimination, a plaintiff must prove that she "has been treated less well at least in part because of her gender." *Mihalik*, 715 F.3d at 110; *see Marseille v. Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981, at *1 (2d Cir. Oct. 26, 2022) (summary order). As described above, Lujan's touching of Shkoza's shoulder or shoulders is the type of "the type of petty slight[] and trivial inconvenience[]" courts have found

not to constitute such treatment, *Russo*, 972 F. Supp. 2d at 450, including—as discussed above—in the "context in which . . . [it] occur[ed]," *Dillon*, 85 F. Supp. 3d at 657. Moreover, once again, even assuming Shkoza established a *prima facie* case, she fails to sufficiently challenge the "legitimate reasons" for NYC Health & Hospitals' actions such that a reasonable juror could infer that discrimination played a role. *Ya-Chen Chen*, 805 F.3d 59 at 76.

The Court thus grants NYC Health & Hospitals' motion for summary judgment on Shkoza's NYCHRL gender discrimination claim.

**CONCLUSION**

For the foregoing reasons, NYC Health & Hospitals' motion for summary judgment is granted. The Clerk of Court is respectfully directed to mail a copy of this order to Shkoza, terminate the motion pending at Docket Number 74, and close this case.

SO ORDERED.

Dated:       March 13, 2024
             New York, New York

_____
Ronnie Abrams
United States District Judge